# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IZELL PULLEN, a minor,<br>JOSEPH PULLEN, his next friend,<br><br>Plaintiffs,<br><br>v.<br><br>VANESSA P. MOORE, BRUCE<br>BROZYNSKI, JOHN MOHLER,<br>LARRY WESTERLUND, and<br>DANIEL FINAN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05 C 4368<br><br>**FILED**<br>OCT 2 6 2005<br>OCT 26 2005<br>Judge Samuel Der-Yeghiayan<br>U.S. District Court |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants Vanessa Moore's ("Moore"), Bruce Brozynski's ("Brozynski"), John Mohler's ("Mohler"), Larry Westerlund's ("Westerlund"), and Daniel Finan's ("Finan") motion to dismiss. For the reasons stated below, we grant the motion to dismiss.

## BACKGROUND

Plaintiff Izell Pullen ("Pullen") is a minor residing in Flossmoor, Illinois. During the period of time relevant to the instant action, Defendants were

1

administrators at Parker Junior High School ("Parker"), which Pullen began attending as a sixth grade student in the fall of 2000. Pullen alleges that in September 2000, Brozynski, an assistant principal at Parker, received a report from a teacher that Pullen had threatened to shoot two female students with a gun. Pullen further alleges that Brozynski held a meeting with Pullen's father Joseph Pullen and the reporting teacher who, according to Pullen, "either denied or retracted having heard Izell make that threat." (Compl. Par. 13). Pullen asserts that "despite there being no evidence of a threat," Brozynski issued Pullen one detention. (Compl. Par. 14). Pullen claims that in the months following this detention, several of the Defendants "continued their persecution of Izell," causing Pullen to get in trouble "an average of once every several weeks, for various minor infractions." (Compl. Par. 15). Pullen also claims that, because of his special education needs, he was assigned a school aide who, according to Pullen, "was nothing other than Izell's personal jailer." (Compl. Par. 16).

Pullen claims that the "next major, wrongful, discplinary event" against him began in late November 2001, when Pullen was accused of engaging in sexual acts with two boys. According to Pullen, he first tried to report to Moore, Parker's principal, that two male students were harassing him. Pullen alleges that the next day, Pullen was called back into Moore's office, where he was told that one of the boy's mothers who Pullen had reported had filed a police report against Pullen, alleging that Pullen had engaged in sexual activity in the school bathroom. Pullen

asserts that he "protested that he didn't do anything, but to no avail." (Compl. Par. 21). Pullen alleges that, at Moore's direction, he called his father, but when Pullen again refused to confess to the charges, Moore took the phone from him and told Pullen's father that Pullen was suspended for his actions. According to Pullen, his father had the report of the charge from the boy's mother read to him, but when Pullen's father asked for a hearing prior to the suspension, Moore refused. Pullen alleges that after he began serving the three-day suspension, a hearing was held in which the two boys recanted their story and denied that Pullen had engaged in the accused behavior. Pullen claims that despite the recantation, Defendants did not lift the suspension, which a month later was rescinded by the administration.

Pullen also asserts that in May 2002, Pullen was given a seven-day suspension following a report by Finan, an assistant principal at Parker, that Pullen had purposefully stuck his aide in the head with a thumb tack and punctured the skin on her finger with the same thumb tack. Pullen alleges that he was not given a hearing or opportunity to contest this charge before he was suspended. Finally, Pullen asserts that "because of defendants' constant persecution of him, [he] did not return to Parker for eighth grade." (Compl. Par. 29).

Pullen, with his father Joseph Pullen acting as next friend, initially brought the instant action in the Circuit Cook of Cook County, alleging a violation of 42 U.S.C. § 1983 ("Section 1983") (Count I), an intentional infliction of emotional distress claim (Count II), and defamation claims (Counts III and IV). Defendants then

removed the matter to this court, and filed the instant motion to dismiss.

## LEGAL STANDARD

In ruling on a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6) the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail ... [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under the current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action....'" *See Sanjuan v. American Bd. of*

*Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

### I. Section 1983 Claim (Count I)

Defendants seek to dismiss Count I of the instant action, asserting that Pullen cannot show a denial of either his procedural due process or substantive due process rights.

#### A. Procedural Due Process

In the instant action, Pullen claims that Defendants failed to provide him adequate procedural protections in regard to his school-related discipline, which

5

amounted to a violation of his due process rights. While "young people do not 'shed their constitutional rights' at the schoolhouse door," *Goss v. Lopez*, 419 U.S. 565, 574 (1975)(citing *Tinker v. Des Moines Ind. Comm. School Dist.*, 393 U.S. 503, 506 (1969)), the procedural protections that must be afforded to a school child by school officials under the Fourteenth Amendment's due process clause have been kept within limited confines. In practical terms, this means that "students . . . must be given some kind of notice and afforded some sort of hearing," before a school can suspend or otherwise discipline a student. *Id.* at 579. Specifically, due process requires that a student disciplined "with a suspension of 10 days or less . . . be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. There does not need to be a delay between when the student is given notice of the charges against him and the hearing, and the hearing can be "rudimentary." *Id.* at 582.

In the instant action, Pullen complains of three specific instances of school discipline, which include the three-day detention for allegedly threatening to use a gun at school, the three-day suspension for allegedly engaging in inappropriate sexual behavior at school, and the seven-day suspension for allegedly harming his aide with a thumb tack. In the complaint, Pullen admits that before he was disciplined in the first two of these situations, he was given notice of the charges against him and a chance to explain his side of the story. (Compl. Par. 13, 21, 22).

6

Therefore, Pullen has not plead sufficient facts to show that his due process rights were violated by Defendants in these two specific instances.

Pullen also states in his complaint that he was not provided a hearing prior to being suspended for allegedly attacking his school aide with a thumb tack. (Compl. Par. 28). However, the Supreme Court stated in *Goss v. Lopez* that "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school" without holding a hearing first. *Goss v. Lopez*, 419 U.S. 565, 582 (1975). Sticking a school aide with a sharp object more than once would clearly lead reasonable school officials to think that Pullen was an immediate threat to others, especially given his history at the school. In addition, Pullen has failed to allege that he was denied a hearing after he was suspended for the thumb tack incident. *Id.* (stating that a "rudimentary hearing [should follow] as soon as practicable" after suspension if a hearing was not provided before suspension due to the circumstances). Therefore, we find that Pullen has failed to sufficiently plead the operative facts of a procedural due process claim in relation to these three specific instances of discipline.

In addition to the three instances of out-of-school suspensions discussed above, Pullen makes general allegations in his statement of facts that, during his time at Parker, he was constantly in trouble and was subjected to "Saturday detentions, office detentions, and in school [sic] suspensions." (Compl. Par. 15). However, Pullen has not specifically plead any of the procedural protections that he was

7

afforded or not afforded in relation to such allegations, and thus we find that Pullen has not sufficiently plead a procedural due process claim in regard to such instances. Therefore, we grant Defendants' motion to dismiss Pullen's procedural due process claims.

### B. Substantive Due Process

Pullen also claims under Count I that Defendants' actions violated his substantive due process rights. According to the Seventh Circuit, "[t]he nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." *Miller v. Henman*, 804 F.2d 421, 427 (7th Cir. 1986). Some substantive due process claims involve fundamental rights, which are "so rooted in the traditions and conscience of our people as to be ranked as fundamental," and thus cannot be infringed without a showing of a compelling government interest. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)(quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)). However, "[a]lthough students may have some substantive due process rights while they are in school, *see Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), education itself is not a fundamental right." *Dunn*, 158 F.3d 966. This means actions by school officials that allegedly violate a student's substantive due process rights will be unconstitutional only if the actions are so arbitrary and lacking in rationality that they "shock the conscience." *Remer v. Burlington Area Sch. Dist.*,

286 F.3d 1007, 1013 (7th Cir. 2002)(citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

In the instant action, Pullen claims that the "continuing pattern of wrongful conduct" he suffered at the hands of Defendants supports a finding that his substantive due process rights were violated. (Compl. Par. 33). Specifically, Pullen alleges, among other things, that he was "in trouble with defendants on an average of once every several weeks, for minor infractions" that would not have gotten other students in trouble (Compl. Par. 15), he was assigned a school aide who "was nothing other than Izell's personal jailor" (Compl. Par. 16), and he "was in the school office all the time on minor charges such as talking or laughing too loud" (Compl. Par. 17). The Supreme Court has made it clear that only truly seriously shocking government activities will violate substantive due process, *County of Sacramento v. Lewis*, 523 U.S. 833, 846-51 (1998). Pullen has not sufficiently alleged facts to prevail on the merits of a substantive due process claim.

Even if Pullen had alleged sufficient facts in regard to a substantive due process claim, Defendants have argued that they are entitled to qualified immunity. According to the Seventh Circuit, "public officials are entitled to qualified immunity if their actions violate 'clearly established statutory or constitutional rights then known to a reasonable officer.'" *Baird v. Board of Educ. for Warren Cmty. Unit Sch.Dist. No. 205*, 389 F.3d 685, 696 (7th Cir. 2004)(quoting *Billings v. Madison Metro Sch. Dist.*, 259 F.3d 807, 816 (7th Cir. 2001)). In determining whether to

apply qualified immunity, the court must "first assess whether 'the state actor's conduct violated a constitutional right when viewed in the light most favorable to the party asserting the injury.'" *Id.* (quoting *Saucier v. Katz,* 533 U.S. 194, 201(2001)). Then, if the court finds a constitutional violation, "we must determine whether the right violated was clearly established." *Id.*

Pullen has not met the very high burden of showing that his constitutional rights were violated, thus he has failed to meet the first prong of the test. Even if Pullen was able to meet the first prong, he has failed to show that Defendants' actions violated "clearly established" law. *Tun v. Whitticker,* 398 F.3d 899, 902 (7th Cir. 2005). Given that there is no definitive case setting forth the substantive due process rights of students in situations like this and that the Supreme Court has recently stated that this area of law should be carefully constrained, we cannot say that Defendants were put on notice that their alleged actions violated clearly established constitutional law. *See Washington v. Glucksberg,* 521 U.S. 702, 720 (1997)(stating that the Court has "'always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended'" and that the Court "must therefore "'exercise the utmost care whenever [it is] asked to break new ground" in regard to substantive due process claims)(quoting *Collins v. Harker Heights,* 503 U.S. 115, 125(1992)). Therefore, we grant Defendants' motion to dismiss Count I in its entirety.

## II. State Law Claims (Counts II, III, IV)

In regard to the remaining state intentional infliction of emotional distress and defamation claims, the Seventh Circuit has stated that where a court dismisses a federal claim and the sole basis for invoking federal jurisdiction has become nonexistent, that court should not exercise supplemental jurisdiction over remaining state law claims. *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003)(stating that if there is a dismissal of the original jurisdiction claim and only a supplemental jurisdiction claim remains "the sole basis for invoking federal jurisdiction is nonexistent and the federal courts should not exercise supplemental jurisdiction over his remaining state law claims"); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts"). We have granted Defendants' motion to dismiss Pullen's Section 1983 claim and Pullen does not indicate in his complaint that this court has diversity subject matter jurisdiction over the remaining state claims. We decline to exercise jurisdiction over the state claims (Counts II- IV).

## CONCLUSION

Based on the forgoing analysis, we grant Defendants' motion to dismiss.

*Samuel Der-Yeghiayan*
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   October 26, 2005